# COVINGTON & BURLING

ONE FRONT STREET
SAN FRANCISCO, CA 94111
TEL 415.591.6000
FAX 415.591.6091
WWW.COV.COM

SAN FRANCISCO
WASHINGTON
NEW YORK
LONDON
BRUSSELS

TARA M. STEELEY
TEL 415.591.7058
FAX 415.955.6568
TSTEELEY@COV.COM

November 16, 2005

<u>VIA HAND DELIVERY</u>

Chief Magistrate Judge James Larson
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom F, 15th Floor
San Francisco, CA 94102

> Re:   In re ATM Fee Antitrust Litigation
>       <u>C.A. No. 04-2676 (VRW) (N.D. Cal.)</u>

Dear Judge Larson:

This letter-brief is submitted in response to the Court's November 2, 2005 Order and the November 9 letter of plaintiffs' counsel.  Plaintiffs have misrepresented the nature of their dispute with Bank of America Corporation ("BAC") concerning documents in the possession, custody, and control of Bank of America, N.A. ("BANA").  This letter seeks to clarify the issues in dispute and to assist the Court in reaching a sensible resolution.

## I.      Background

At the outset of this case, plaintiffs sued BAC, alleging that it is a bank that engages in various challenged business activities involving ATM transactions.  In fact, BAC is merely a bank holding company and has little or no connection to the matters at issue in the complaint.[1]

BAC first notified plaintiffs of its lack of involvement in the matters at issue in its initial disclosures, served on July 5, 2005.[2]  BAC also pointed out that the entity plaintiffs appeared to be interested in, BANA, probably would have relevant documents in its possession.

---

[1]     The original Complaint also named the holding companies of Bank One and JPMorgan Chase but included no factual allegations against those entities.  Finding that Plaintiffs had failed to plead facts to justify their inclusion in the case, on May 4, 2005, the Court granted their motion to dismiss.  The Complaint alleged (erroneously) that BAC was a bank, so there was no basis on which to address this issue as to BAC at the pleadings stage.

[2]     The facts discussed in this letter are attested to in my accompanying declaration, which attaches some of the key items that are cited.

Chief Magistrate Judge Larson
November 16, 2005
Page 2

COVINGTON & BURLING

BANA is the national bank popularly known as "Bank of America."  It is a member of the Star ATM network (the focus of plaintiffs' complaint) and pays and receives ATM interchange fees. BANA is a subsidiary of NB Holdings Corporation, which is in turn a subsidiary of BAC.  Plaintiffs have offered no evidence that BAC and BANA are in any way operated as alter egos of one another, and in fact they are not – nor could they be under applicable law, given BANA's status as a national bank.

Plaintiffs did nothing in response to BAC's initial disclosures.  Instead, they proceeded to serve voluminous discovery on BAC, nearly all of which called for material that plaintiffs had already been told would be held exclusively (if at all) by BANA.  On July 20, 2005, within days of receiving plaintiffs' interrogatories and before plaintiffs had served any document requests, Sonya Winner, counsel for BAC, called plaintiffs' counsel to remind them that BAC has no connection to the issues in this litigation and to attempt to negotiate a reasonable approach to discovery.  Ms. Winner suggested that plaintiffs might wish to amend the pleadings to name BANA in place of BAC. She also offered to work with plaintiffs to ensure that BANA responded promptly to any discovery that was served directly upon it.

After this phone call, counsel for BAC heard nothing from plaintiffs, so Ms. Winner again contacted Mr. Cohen in a letter sent August 5, 2005, reminding him that the issue remaining outstanding.  Finally, on August 11, Mr. Cohen informed Ms. Winner that plaintiffs intended to continue to pursue the discovery from BAC.

Since that time, plaintiffs have refused to engage in any meaningful discussions with BAC's counsel or to pursue the obvious practical solution of serving a third-party subpoena on BANA.  Nor, although they have now asked the Court to order BAC to search for and produce documents from *all* of BAC's direct and indirect subsidiaries, have plaintiffs *ever* discussed with us a concern about any other subsidiaries.

The relief plaintiffs seek is not justified, either legally or practically.  Plaintiffs have failed to meet their burden to demonstrate that BAC controls BANA's documents, despite direct invitations from the Court to do so.  And even if such control could be established, the burden plaintiffs seek to impose on BAC is unreasonable and unnecessary, especially given that nothing prevents plaintiffs from obtain the discovery they seek directly from BANA.

## II.     Plaintiffs Have Not Met Their Burden to Show Control.

Fed. R. Civ. P. 34(a) requires production of documents "in the possession, custody or control of the party upon whom the request is served."  Since the documents sought by plaintiffs are not in BAC's possession or custody, the only question here is whether they are in BAC's legal "control."  Under applicable Ninth Circuit law, it is plaintiffs' burden to prove that BAC has control over the documents they seek.  *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control.").  Plaintiffs have made no serious effort to carry that burden here, relying instead solely on the formality of the corporate relationship between BAC and BANA.

"Control is defined as the legal right to obtain documents upon demand," and it *cannot* be established solely on the basis of a mere corporate relationship.  *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-08 (9th Cir. 1999) (quoting *Int'l Union*, 870 F.2d at 1452).  The facts of *International Union* illustrate this standard.  There, the Department of Labor had served a subpoena on International Union, seeking documents from the latter's local affiliates.  The Ninth Circuit held that

Chief Magistrate Judge Larson
November 16, 2005
Page 3

COVINGTON & BURLING

International Union lacked control over the documents, because the local unions were separate legal entities and the contract governing their relationships did not expressly give International Union the right to obtain their documents upon demand. *Int'l Union*, 870 F.2d at 1452-53. Similarly, in *Citric Acid*, the Ninth Circuit concluded that a U.S. company did not have legal control over documents within the possession of its Swiss affiliate, because they were separate legal entities and there was no contract giving the U.S. company the right to compel documents from the affiliate. *In re Citric Acid*, 191 F.3d at 1108.

Here, there is no doubt that BAC and BANA are separate legal entities. They are independent corporations with separate articles of incorporation and boards of directors. Indeed, they are incorporated under entirely different laws and required to conduct their operations under entirely distinct regulatory regimes: BAC is a state-chartered corporation that is regulated by the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956, while BANA is a federally chartered entity that is regulated by the Office of the Comptroller of the Currency, a bureau of the U.S. Department of Treasury, under the National Bank Act. Plaintiffs have offered no evidence to suggest that BAC and BANA have commingled funds, failed to keep separate corporate records, or in any other way disregarded the legal formalities required for separate entities. Nor have plaintiffs offered evidence to suggest that BAC has a right to demand the documents at issue from BANA.

Because they cannot meet the standard set forth in *International Union* and *Citric Acid*, plaintiffs rely heavily on a single sentence from *International Union* in which the court suggested, in dicta, that a corporation would have an obligation to produce documents possessed by a wholly owned subsidiary. 870 F.2d at 1452. This reliance is misplaced. In the Ninth Circuit, as elsewhere, proof of actual control is still required; mere corporate relationship is insufficient. *See In re Citric Acid*, 191 F.3d at 1107 (denying order to compel production of affiliate's documents; "[P]roof of theoretical control is insufficient; a showing of actual control is required."); *Flavel v. Svedala Indus., Inc.*, 1993 U.S. Dist. LEXIS 18730, at * 13 (E.D. Wis. December 13,1993) ("ownership share in the subsidiary by the parent" is not an "exclusive test" for determining "control"); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986) ("It is obvious that the particular *form* of the corporate relationship does not govern whether a party controls documents").

The authorities cited in the Court's November 2, 2005 briefing Order do not support a finding that BAC "controls" BANA's documents merely because BANA is a subsidiary. *See* Order at 2-3 (quoting 145 A.L.R. Fed. 527 § 2(a)). A review of the cases cited in the A.L.R. article shows that nearly all involved (i) a substantial identity between the corporations; (ii) a showing of actual, practical control by the parent over the subsidiary; (iii) a showing that the corporations occupied the same premises, and/or (iv) proof that the parent's management was in active control of the requested documents. None of these factors has been shown to exist here.

The Court has also cited *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958). The issue presented there was whether a company "controlled" documents within the possession of a Swiss entity where the latter could not produce them without violating Swiss law. The Supreme Court "accept[ed] as amply supported *by the evidence* the findings of the two courts below that, apart from the effect of Swiss law, the

Chief Magistrate Judge Larson
November 16, 2005
Page 4

COVINGTON & BURLING

[requested] documents are within petitioner's control."  357 U.S. at 204 (emphasis supplied).  No such "evidence" has been supplied here.[3]

Finally, even if the Court were to presume that parent companies "control" the documents of their subsidiaries, plaintiffs have not shown that such a presumption would be appropriate in the special circumstance of bank holding companies and their national bank subsidiaries. (We pointed this factor out in our earlier letter to Chief Judge Walker, but plaintiffs' submission is entirely silent on the subject.)  The federal agency that regulates national banks has specifically cautioned that banks must remain independent from their holding companies.  *See, e.g.*, Office of the Comptroller of the Currency, *The Director's Book:  The Role of a National Bank Director*, 21-22 (1997).  Far from blindly following the holding company's directives, national banks are required to evaluate independently a holding company's policies and directives and to reject those that do not serve the best interests of the bank.  This is a direct reflection of the differences in incorporation, regulation, and functions of holding companies and national banks, including the critical fact that the deposit liabilities of national banks are federally insured by the Federal Deposit Insurance Corporation, while the liabilities of holding companies are not.   Plaintiffs have not even attempted to explain how these concerns can be reconciled with their assertion that BAC has a blanket ability to compel BANA to turn over its documents.

### III.     Even If Control Existed, Plaintiffs' Request is Unnecessary and Would Impose Undue Burden.

Even if plaintiffs could establish that BAC "controls" BANA's documents, the Court should not compel BAC to provide discovery from BANA because of the unnecessary and undue burden this would place on BAC.  *See* Fed. R. Civ. P. 26(c); *Excelligence Learning Corp. v. Oriental Trading Co*., 2004 U.S. Dist. LEXIS 28125, at *7 (N. D. Cal. June 14, 2004)  ("Discovery may be limited by the court for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.")

BAC possesses virtually *none* of the information and documents plaintiffs seek.  Instead, plaintiffs are trying to use BAC as a conduit to obtain massive amounts of discovery from another entity, a procedural mechanism that would impose substantial – and completely unnecessary – burdens on BAC.  Unlike most of the past cases in which this issue has been actively litigated,[4] there is nothing to prevent plaintiffs from simply serving BANA with a third-party subpoena.  *See Int'l Union*, 870 F.2d at 1454 (denying motion to compel where party seeking documents could obtain the documents directly from the entity that possessed them); *Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991) (same).

BANA is not located in a foreign country and is not subject to foreign laws limiting its ability to provide discovery.  Nor is BANA seeking to avoid service of a subpoena.  To the contrary, from the beginning of our discussions on this issue, we have clearly and unequivocally stated that BANA would provide discovery in a timely manner if plaintiffs either added it as a party or served a third-

---

[3]      Nor does *American Rock Salt Co., LLC v. Norfolk Southern Corp.*, 228 F.R.D. 426 (W.D.N.Y. 2004) support plaintiffs' position.  To the contrary, that court described numerous factors that should be considered when determining "control," including "commonality of ownership, exchange or intermingling of directors, officers or employees of the two corporations, exchange of documents between the corporations in ordinary course of business, and involvement of the non-party in the litigation."  *Id.* at 457 (internal quotations and citations omitted).

[4]      *See, e.g.*, *In re Citric Acid*, 191 F.3d at 1107 (documents sought in possession of overseas affiliate); *Societe Internationale*, 357 U.S. at 199-200 (same).

Chief Magistrate Judge Larson
November 16, 2005
Page 5

COVINGTON & BURLING

party subpoena on it.  Although plaintiffs have explained that they made a deliberate choice not to sue BANA,[5] they have not even attempted to explain why they could not simply serve a subpoena on BANA.  Plaintiffs' stubbornness on this point is particularly puzzling given that they have served numerous third-party subpoenas on other entities, including at least one affiliate of another defendant.

## IV.     There Is No Ripe Dispute on Discovery from Entities Other Than BANA.

Plaintiffs ask the Court to order BAC to provide discovery from all of its subsidiaries.  Yet, in violation of this Court's local rules, plaintiffs never sought to meet and confer about any such entities other than BANA before bringing that issue to the Court.  *See* Civ. L. R. 37-1 (requiring parties to confer about discovery disputes before moving to compel).  Nor have plaintiffs responded to BAC's subsequent attempts to discuss the matter.  As far as we are aware, BANA is the only BAC affiliate that would be expected to have information relevant to this litigation. And plaintiffs have certainly made no showing to justify an order requiring BAC to search affiliates that are *not* believed to possess relevant documents.  Thus, there is no ripe dispute concerning the production of documents from any entity other than BANA.

## V.      Plaintiffs' Request for an Order Compelling Production Ignores BAC's Numerous Other Valid Objections to Plaintiffs' Requests.

Finally, even if the Court were to find that BAC controls BANA's documents, it would not follow that plaintiffs would be entitled to everything sought in their discovery requests.  BAC (like all of the other defendants in this action) has asserted numerous objections to those requests on independent grounds that are not before this Court.[6]  In fact, plaintiffs have not even attempted to meet and confer about the scope of BAC's objections to the majority of their requests; nor does their letter to the Court discuss the merits of any of those objections.  Those issues are accordingly not ripe for resolution by the Court.

Very truly yours,

/s/

Tara M. Steeley

TMS/kmq

---

[5]     Plaintiffs have made clear that their decision not to name BANA as a party was not a "mistake" but rather a deliberate choice.  *See* September 27, 2005 Letter from Joseph Saveri to Chief Judge Walker.  We accept that plaintiffs are entitled to decide whom they wish to sue, and that they have chosen not to sue BANA in this action.

[6]     BANA has not had an opportunity to interpose its own objections to these requests.  Since the requests are directed almost entirely at BANA's documents, this provides yet another reason why it is inappropriate for plaintiffs to use BAC as a conduit for discovery against BANA instead of simply seeking the material from BANA directly.