UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ATM FEE ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. C 04-2676 CRB<br><br>**CLASS ACTION**<br><br>**JOINT STATUS CONFERENCE STATEMENT**<br><br>Date:        March 9, 2007<br>Time:       8:30 a.m.<br>Courtroom: 8<br>The Honorable Charles R. Breyer |

I.   **INTRODUCTION**

Pursuant to Local Civil Rule 16-10, the parties submit this Joint Status Conference Statement in connection with the March 9, 2007, Status Conference.[1]  Where the parties differ, their positions are stated separately.

II.  **LITIGATION STATUS**

On November 30, 2006, the Court issued a Memorandum and Order ("November 30 Order") terminating the motions currently pending before it, and directing the parties to proceed with "any discovery necessary to elucidate the plausible procompetitive justifications that might be advanced in support of the fixed interchange fee."  November 30 Order at 1.  During the most recent status conference on December 15, 2006, the Court authorized the parties to continue discovery pursuant to its November 30 Order; instructed Defendants to tender a statement of procompetitive justifications for the Star ATM interchange fee on March 1, 2007; deferred

---

[1]   Local Civil Rule 16-10(d) requires parties to submit a case management statement no fewer than 10 days before any conference.

setting a date for parties to file summary judgment motions; informed the parties that discovery disputes would not be referred to the Magistrate Judge; and scheduled a status conference for March 9, 2007. *See* 12/15/06 Hearing Tr. at 9-17. As described in more detail below, Plaintiffs subsequently served discovery requests on the Defendants, and the parties have begun the process of meeting and conferring on those requests. Plaintiffs also served discovery on third parties.

### III. DISCOVERY REGARDING PROCOMPETITIVE JUSTIFICATIONS

**A.    Scope of Discovery Regarding Procompetitive Justifications**

*Plaintiffs' Statement*

During the December 15 status conference, the Court stated, "I want to find out what were the economic justifications of this arrangement. It appears to me that that is something that will be sought by the plaintiffs in discovery." December 15, 2006 Hearing Transcript at p. 4. The Court made clear during that status conference that discovery should not be confined to any particular legal theory but rather should address the issues generally so as to enable Plaintiffs to assess and test Defendants' alleged procompetitive justifications. *Id.* at 8-10.

*Defendants' Statement*

During the December 15, 2006 Status Conference, the Court stated, "I really want to focus on the issue of what was the economic justification for the arrangement." 12/15/2006 Hearing Tr. at 6:24-7:1. The Court warned the Plaintiffs not to stray into other areas. *Id.* at 7:2-5 ("So if you start taking discovery in another area and sources and other side objects, you are going to have to come to me, and I'm going to say, 'why are you doing this,' and you are going to look awful."). While allowing the Plaintiffs to do some "contextual work" in which to look at the pro-competitive justifications, *id.* at 10, the Court stated that "they have to ask for those things in the context of the pro-competitive justifications." *Id.* at 9.

**B.    Status of Discovery to Defendants**

Plaintiffs served their Fourth Set of Requests for Production of Documents on the

Network and on the Bank Defendants on January 8, 2007 (the "Requests").[2] Plaintiffs' Requests include 31 separate document requests to the Network, and 35 document request to each of the Bank Defendants. The Network and Bank Defendants served their written objections and responses to Plaintiffs' Requests on February 13, 2007. All parties jointly held their initial discovery conference on February 15. The parties held their second discovery conference on February 21. At the time of this filing, the parties have not completed their joint discovery conferences regarding the Fourth Set of Requests for Production of Documents. The parties have scheduled a third joint discovery conference for February 26, and have agreed upon the probable necessity for subsequent, separate conferences between Plaintiffs and each Defendant in order to address individual issues.

Following Defendants' March 1 statement of pro-competitive justifications, Plaintiffs will consider whether and to what extent they will propound further document requests or other discovery on Defendants.

### C.     Status of Discovery to Third Parties

Beginning on January 22, 2007, Plaintiffs served *subpoenas duces tecum* to approximately fifteen different third parties. Each of the third parties that has responded to the subpoenas has done so with objections. To date, none of the third parties has produced any documents. Plaintiffs have commenced the process of meeting and conferring with the subpoenaed third parties. Certain of these third parties have suggested that Plaintiffs are precluded from serving third party discovery at this time. These third parties argue that the Court did not expressly allow third party discovery during the December 15 status conference. Plaintiffs believe that this position is inconsistent with this Court's statements during the December 15 status conference. *See*, *e.g.*, December 15, 2006 Hearing Transcript at p. 8-9 ("And so I'm not going to cut them off if they have some viable – some theory that they believe to be a viable theory in which they can demonstrate the so-called lack of economic justification . . . .").

---

[2]     Unless otherwise noted, all references to Plaintiffs' document requests are to Plaintiffs' Fourth Set of Requests for Production of Documents propounded on Defendants on January 8, 2007.

1  Plaintiffs request that the Court clarify the scope of third party discovery.

2  Following Defendants' March 1 statement of pro-competitive justifications, Plaintiffs
3  will consider whether and to what extent they will propound additional discovery on third
4  parties.

5  Defendants have no discovery requests pending with third parties at this time.

6  **IV.    DISCOVERY ISSUES THAT LIKELY WILL REQUIRE EVENTUAL COURT**
7  **RESOLUTION**

8  *Plaintiffs' Statement*

9  Although the parties have not discussed the following issues in the context of each
10 particular request and objection, they have discussed these issues generally. While the meet and
11 confer process is ongoing, Plaintiffs believe that Court guidance on these issues may facilitate
12 the meet and confer process and narrow potential disputes.

13 *Defendants' Statement*

14 The Defendants agree that Court intervention may eventually be required to resolve
15 certain issues regarding the appropriate scope of discovery, but such intervention is premature
16 given that the Defendants' discovery responses were served just two weeks ago, and the meet-
17 and-confer process is ongoing.  As detailed below, the parties are still meeting and conferring as
18 to each of the disputed issues Plaintiffs have identified herein.  Moreover, contrary to Plaintiffs'
19 suggestion, the issues identified cannot fairly be resolved in the abstract, but rather must be
20 addressed in the context of their application to specific document requests and in light of the
21 particular circumstances of individual defendants.

22 **A.    Relevant Time Period**

23 *Plaintiffs' Statement*

24 The Court's November 30, 2006 Order requires Plaintiffs to address whether Star's fixed
25 interchange fees have any procompetitive effects in light of Defendants' assertion that "the fixed
26 interchange fee was necessary to the very existence of the ATM network." *In re ATM Fee*
27 *Antitrust Litigation*, 2006 WL 3462794 at *1. This requires an investigation dating back to the
28 advent of fixed interchange fees in Star's ATM network, and how the justifications for and

4

effects of fixed interchange fees have changed over time, including, for example, when the network decided to retain fixed interchange fees after lifting the ban on surcharges. To that end, certain of Plaintiffs' document requests—as identified on their face—seek discovery regarding fixed interchange fees starting from their inception, which Plaintiffs believe occurred on or near January 1, 1984.

Plaintiffs have proposed that Defendants need not produce any documents dated after December 31, 2006. Plaintiffs believe they are entitled to documents post-dating the complaint because these documents will contain highly relevant information regarding the Defendants' purported procompetitive justifications, including changes in the fees associated with ATM transactions, costs associated with these transactions, and other information regarding the relevant market, including recent advances in technology. Recent competition to the ATM market in the form of alternative payment systems (e.g., Point of Sale ("POS") withdrawals) and their impact on volume, revenues, fees, and costs of ATM transactions are also highly relevant.

*Defendants' Statement*

*Earliest Date of Discoverable Material*:  In the most recent discovery conferences, the Defendants told Plaintiffs that they would consider producing certain types of documents without date restriction (specifically, those directly relating to procompetitive justifications), and would be willing to discuss reasonable date restrictions for other types of records. Because of differing circumstances, burden issues, and prior agreements, the details of any such compromise may need to be addressed at the future separate conferences with each Defendant. Plaintiffs agreed to consider this request, but have not yet taken a position with the Defendants on this proposal, even at a high level. More importantly, Plaintiffs have not yet identified which of their 31 Requests to the Network or their 35 Requests to each of the Bank Defendants are requests on which Plaintiffs are willing to accept Defendants' proposed date limitations, and which of those requests are ones for which the Plaintiffs believe that the Defendants' proposed date restrictions are unacceptable. It is not possible to identify any actual areas of dispute unless and until Plaintiffs address these issues. Defendants are available to meet and confer with the Plaintiffs on

this subject.

*Latest Date of Discoverable Material*: In the most recent discovery conferences, the Defendants took the position that the Plaintiffs should be bound by their prior agreements regarding the end date for Defendants' document collection and production, including agreements with the Network and at least one of the Bank Defendants that documents created after December 31, 2004, definitionally were outside the scope of the Plaintiff's requests. Plaintiffs rejected this, and instead took the position that they are not bound by their agreements on the first three sets of document requests. Plaintiffs proposed for this set of Requests, that discovery be capped at December 31, 2006. The Defendants agreed to consider producing certain enumerated documents from the 2006 period (for example, Defendants agreed to produce a 2006 document called an "ATM Deployer Study," which is the latest iteration in a periodic industry survey and does not represent a substantial collection burden), but Defendants otherwise have not agreed to Plaintiffs' proposal. Plaintiffs' proposal would impose an extreme burden on the Defendants, who have already conducted extensive record searches of their custodians more than 18 months ago and would now be required to re-search files and re-collect documents from custodians for recently created documents that have little if any obvious bearing on the procompetitive justifications for interchange fees on the Star ATM Network. Moreover, Plaintiffs have not yet identified which (if any) of their 31 Requests to the Network or 35 Requests to each of the Banks they believe require a December 31, 2006, discovery cap, instead of the previously-negotiated and agreed upon discovery cap. Defendants are available to further meet and confer with the Plaintiffs on this subject.

**B.     Format of Production/Native Format**

*Plaintiffs' Statement*

Plaintiffs have requested that Defendants produce in their native format the documents called for in Plaintiffs' recent document requests. Plaintiffs' request is consistent with amended Federal Rule of Civil Procedure 34(b). Rule 34(b) provides that document requests may "specify the form or forms in which electronically stored information is to be produced."

Plaintiffs understand that Defendants may have previously invested some time and

1  expense in compiling documents and electronically stored information. Plaintiffs have proposed
2  to Defendants that for those documents that Defendants have already gathered and that have not
3  yet been produced, Plaintiffs will forego their right to specify the form of such production on the
4  conditions that Defendants promptly identify those documents by Bates number and promptly
5  produce those that are responsive to the outstanding requests. For those documents that have not
6  yet been gathered, Plaintiffs do not see how it would be unjust or impracticable for Defendants to
7  produce them in their native format. Defendants have not yet responded to this proposal.  Thus,
8  while production of electronic documents in their native format is routine and Defendants'
9  position regarding Rule 34 is wrong, the issue is not yet ripe for Court determination.

*Defendants' Statement*

11  In December 2005, Plaintiffs and Defendants finalized a production and cost sharing
12  agreement regarding the format of production for all documents produced in this case, including,
13  specifically, the format of electronic files.  The agreement requires that all documents in this case
14  (regardless of original format) be produced in electronically searchable TIFF/OCR format in
15  accordance with technical specifications requested by Plaintiffs' counsel, with Plaintiffs
16  reserving the right to come back with a request for a "reasonably limited volume" of documents
17  in native format following their TIFF/OCR production.
18  Plaintiffs are now trying to back out of this agreement reached over a year ago, and are
19  requesting the production of electronically stored information responsive to Plaintiffs' Fourth Set
20  of Requests for Production in native format.  Plaintiffs' position rests on a fundamental
21  misapprehension that the 2006 Amendments to the Federal Rules of Civil Procedure now permit
22  them to unilaterally mandate native format production.  Neither the text of amended Rule 34(b)
23  nor the Advisory Committee Notes for the 2006 Amendment support this.  Indeed, the Advisory
24  Committee Notes to amended Rule 34 state that: "[Rule 34] does not require a party to produce
25  electronically stored information in the form in which it is ordinarily maintained [*i.e.*, native
26  format], as long as it produced in a reasonably usable form."  Fed. R. Civ. P. 34(b) Advisory
27  Committee Notes for the 2006 Amendment.  Producing documents in a "reasonably usable form"
28  is precisely what the parties have agreed to do here.  Amended Rule 34 merely permits Plaintiffs

7

Case Number: C 04-2676 CRB

to "specify" (but not unilaterally require) their desired form of production for electronically stored information. The Advisory Committee Notes are explicit that "[t]he responding party is also involved in determining the form of production" and that the responding party may "object[] to a form that the requesting party specifies." Fed. R. Civ. P. 34(b) Advisory Committee Notes for the 2006 Amendment.

Requiring blanket native format production at this stage of the case would unnecessarily delay the completion of discovery in this matter, and would cause the Defendants to incur significant expense to revise technology systems already established for this case. The Defendants have relied on the production agreement with Plaintiffs and have incurred significant expenses to process paper and electronic documents in accordance with this agreement, and will continue to do so. Plaintiffs unilateral demands are in direct contradiction to the production agreement in place, and Defendants are properly refusing to change course after a year and a half of discovery in this litigation. In addition, there are numerous technological and logistical problems with producing documents in native format, and it is not routine.

**C.    Relevant Scope of Discovery**

       **1.    Non-Star ATM Networks**

*Plaintiffs' Statement*

Certain of Plaintiffs' document requests seek information related to non-Star ATM Networks. Defendants have stated that they will only provide information regarding non-Star networks that they happen to stumble across. They are unwilling to engage in any organized search for documents relating to other networks. This narrow approach will prevent Plaintiffs from obtaining necessary discovery. Discovery regarding non-Star ATM Networks is necessary for Plaintiffs to compare the Network Defendants to their competitors. For example, any rationale or justification any other ATM network may have provided for adopting or changing or eliminating interchange fees (ATM or Point of Sale ("POS")) or for permitting surcharges will serve as a point of comparison for any alleged justifications Star may proffer. In addition, Defendants' asserted pro-competitive justifications should be analyzed in the context of the ATM industry, which is comprised of other networks. Information regarding other networks is

useful to this analysis. This is consistent with the Court's statement, during the December 15 hearing, that discovery regarding the industry is appropriate:

> I'm doing so, so you understand, to try to give the Plaintiffs the opportunity to flesh out the circumstances, the factual context in which we could take a look at all of these so-called "pro-competitive justifications." . . . [T]he problem is sometimes a -- you don't understand the impact or the merit of the so-called pro-competitive justification, or lack thereof, until it's in the context of how the industry itself works . . . ."

December 15, 2006 Hearing Transcript at p. 10.

### *Defendants' Statement*

Defendants do not agree with Plaintiffs' characterization of the parties' discussion of this issue in discovery conferences to date. The Parties likely will disagree about the potential relevance of many types of documents relating to non-Star ATM networks, but it is not clear which if any of the Plaintiffs' actual document requests are in dispute, since the Parties have not finished meeting and conferring about the Fourth Set of Requests for Production. The Defendants have proposed, for instance, that they would produce (and in many cases already have produced) documents that discuss other ATM networks to the extent those documents also discuss the Star ATM network and are otherwise responsive to a specific request. Plaintiffs have not yet responded to this proposal. Several Defendants also agreed to consider producing documents that are "network neutral" – i.e., a document about economic justifications for interchange in an ATM network that the Defendants find in the course of searching for files related to the Star ATM network, regardless of whether that document actually mentions Star by name – where that document is otherwise responsive to specific requests. Again, Plaintiffs have not identified for which if any of their specific requests this would be an adequate solution.

Because some specific types of requested information relating to other networks will be disputed and some will not, discussing this issue in the abstract is simply not productive: Plaintiffs need to identify which of their 31 Requests to the Network, if any, and which of their 35 Requests to each of the Bank Defendants, if any, warrant the substantial burden of searching, collecting, and producing files that are entirely unrelated to the Star ATM Network. Plaintiffs have not done so thus far. The Parties have agreed to discuss further what approaches might help reasonably contain the Defendants' search obligations, but the parties have not yet had the

opportunity to meet for discussion of this proposal under the individual circumstances concerning each Defendant. The Defendants are available to further meet and confer with the Plaintiffs on this issue.

### 2. Point-of-Sale ("POS") Interchange Fee

*Plaintiffs' Statement*

Plaintiffs have identified on their face those requests where Point of Sale ("POS") interchange fees are relevant. These documents are necessary because, among other things, the rationale or justifications for adopting and changing those fees serve as a basis of comparison to Defendants' asserted pro-competitive justifications for ATM interchange fees. In fact, POS transactions are similar to foreign ATM transactions in important respects, including, in particular, the cardholder's ability to withdraw cash from their account. However, unlike ATM interchange fees, which are paid to the ATM owner, POS interchange fees are paid to the card-issuing bank. Any reasons or justifications for a structure where the interchange fee is reversed are highly relevant to the alleged justifications for the fixed ATM interchange fee.

*Defendants' Statement*

The issue of the relevance of POS interchange is not yet properly raised before this Court. POS transactions, and the interchange fees associated with those transactions, do not occur at ATMs. Rather, "POS interchange" refers to the interchange assessed when a merchant, such as a grocery store, uses a PIN-authorized point-of-sale device so that the merchant's customer can make a purchase by means of a debit card transaction. Notwithstanding the parties' disagreement about the relevance of information Plaintiffs have requested concerning POS interchange in this action, practical compromises by various Defendants appear possible in the context of specific requests, and the parties have not yet completed meeting and conferring about which of Plaintiffs' Requests for Production actually raise this issue. Several of the Defendants have agreed to produce (and in some cases have already produced) documents that discuss or compare certain information relating to both Star ATM and Star POS interchange fees, to the extent the document is otherwise responsive to a Request. Adding POS interchange as an entirely separate area of discovery, however, substantially expands the burden on the

1  Defendants. Some of the Bank Defendants operate their Point-of-Sale businesses separately
2  from their ATM businesses, and expanding discovery to include documents relating only to POS
3  would require searching, collecting, and producing records from entirely separate business units
4  (including, of course, different custodians). Imposing such a burden is unjustified here.
5  Nevertheless, Defendants are available to further meet and confer with the plaintiffs on this
6  issue.

### 3.     Custodial Search Approach

*Plaintiffs' Statement*

Plaintiffs propose a custodial approach to Defendants' search for documents responsive to Plaintiffs' discovery requests. Plaintiffs propose that the parties negotiate as to the list of custodians whose records (including electronically stored information) Defendants will search for responsive information and materials. A custodial approach to searching for information would ensure that Plaintiffs obtain most of Defendants' discoverable information without imposing undue burdens on the Defendants.

*Defendants' Statement*

Defendants understand Plaintiffs' proposed custodial search. As Defendants have explained during the group discovery conferences, though, this is an issue that the Parties will have to meet and confer on separately, Defendant by Defendant. Some Defendants already have had extensive discussions with Plaintiffs about the proper scope of a custodial search. Some Defendants have explained that the custodial search mechanism may not be practicable for large segments of documents, since, for example, their archive files are not segregated by custodian. Defendants are available to meet and confer with Plaintiffs on this issue.

### V.     **PROPOSED PROCESS FOR RESOLVING DISCOVERY DISPUTES**

*Plaintiffs' Statement*

Plaintiffs have identified and anticipate discovery-related disagreements with Defendants and third parties that may require court intervention. Plaintiffs propose a streamlined and expedited process that would permit the parties to raise discovery disputes with the Court promptly—through letter briefing or some other similar procedure—once the parties to the

1  discovery dispute reach an impasse. Plaintiffs believe Defendants' proposal to wait until the
2  entire meet and confer process is complete as to every issue before submitting any issue to the
3  Court is inefficient. Consistent with practice in other cases, Plaintiffs believe it would be most
4  efficient to address discrete disputes as they are identified.

*Defendants' Statement*

Defendants believe that while the Court's directional guidance on how to keep discovery focused on procompetitive justifications is of course helpful, the only way ultimately to resolve discovery disputes is by dealing with them on a request-by-request basis. Defendants therefore propose that Plaintiffs be required to first complete the meet and confer process with each of the Defendants, then, if necessary, file a motion on specific discovery requests, explaining which of Defendants' discovery responses (as modified in the meet and confer process) are inadequate, and why that is so. Defendants are amenable to discussing a process by which the parties might advance this motion practice in order to address these issues with the Court promptly, should the parties reach an impasse but not to submitting a theoretical issue for the court's resolution until that issue has been discussed by the parties in the context of the specific requests.

## VI.   JOINT STATUS CONFERENCE SCHEDULE

The parties propose that the Court hold the next status conference six weeks from the March 9 conference, with the specific date to be determined based on the Court's availability.

| | | |
|---|---|---|
| 1 | Dated: February 23, 2007 | Respectfully submitted, |
| 2 | | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP |

By:  / s /
_____

  Joseph R. Saveri

Joseph R. Saveri (SBN 130064)
Hector D. Geribon (SBN 200410)
Peter E. Leckman (SBN 235721)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
phone: (415) 956-1000


By:  / s /
_____

  Merrill G. Davidoff

Merrill G. Davidoff (Admitted *Pro Hac Vice*)
Bart D. Cohen (Admitted *Pro Hac Vice*)
Michael J. Kane (Admitted *Pro Hac Vice)*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
phone: (215) 875-3000

*Co-Lead Counsel for Plaintiffs*

MORRISON & FOERSTER LLP


By:   / s /
         Gregory B. Koltun

Robert S. Stern
Gregory B. Koltun
Benjamin J. Fox
Sylvia Rivera
555 West 5th Street, 35th Fl.
Los Angeles, CA  90013-1024
phone: (213) 892-5200
fax: (213) 892-5454

*Attorneys for Defendant JP Morgan Chase Bank, N.A., Successor-in-Interest to Bank One, N.A.*

HELLER EHRMAN LLP


By:   / s /
         Rachel M. Jones

Stephen V. Bomse
Rachel M. Jones
Adam J. Gromfin
333 Bush Street
San Francisco, CA  94104
phone: (415) 772-6000
fax: (415) 772-6268

*Attorneys for Defendant SunTrust Banks, Inc.*

HOWREY LLP

By: / s /
Brian Wallach

Brian Wallach
Peter E. Moll
Brian Howie
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
phone: (202) 783-0800
fax: (202) 383-6610

*Attorneys for Concord EFS, Inc. and First Data Corp.*

LATHAM & WATKINS LLP

By: / s /
Joshua N. Holian

Daniel M. Wall
Joshua N. Holian
Erica T. Grossman
505 Montgomery Street
San Francisco, CA 94111
phone: (415)395-8101
fax: (415) 395-8095

*Attorneys for Defendants Wells Fargo & Co., Wells Fargo Bank, N.A. and Servus Financial Corp.*

COVINGTON & BURLING LLP

By: / s /
James R. Atwood

Sonya D. Winner
James R. Atwood
Tara M. Steeley
One Front Street, 35th Fl.
San Francisco, CA 94111
phone: (415) 591-6000
fax: (415) 591-6091

*Attorneys for Defendant Bank of America Corporation*

|   |   |
|---|---|
| 1 | WEIL, GOTSHAL & MANGES LLP |
| 2 |   |
| 3 | By:      / s /  |
|   |          Carrie M. Anderson |
| 4 |   |
| 5 | James C. Egan, Jr. |
|   | Carrie M. Anderson |
|   | Eric C. Lyttle |
| 6 | 1300 Eye Street, N.W. |
|   | Suite 900 |
| 7 | Washington, D.C.  20005 |
|   | phone: (202) 682-7000 |
| 8 | fax: (202) 857-0940 |
| 9 | *Attorneys for CITIBANK, N.A.* |
|   | *Successor-by-Merger to* |
| 10 | *Defendant CITIBANK (WEST), FSB* |
| 11 | REED SMITH LLP |
| 12 |   |
| 13 |   |
|   | By:      / s /  |
| 14 |          Jack R. Nelson |
| 15 | Jack R. Nelson |
|   | 1999 Harrison Street |
| 16 | Suite 2400 |
|   | Oakland, CA  94612-3572 |
| 17 | phone: (510) 763-2000 |
|   | fax: (510) 273-8832 |
| 18 |   |
| 19 | *Attorney for Defendant Wachovia Bank, N.A.* |

16

Case Number: C 04-2676 CRB