**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE ATM FEE ANTITRUST
LITIGATION,

——————————————————/

This Document Relates To:

ALL ACTIONS

——————————————————/

No. C 04-02676 CRB

**ORDER RE: PLAINTIFFS' FOURTH
SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS**

Now pending before the Court is Plaintiff's motion to compel.  For the reasons set forth below, the motion is hereby GRANTED in part and DENIED in part.

**BACKGROUND**

In this action, Plaintiffs claim that the "interchange fee" charged by members of the Start ATM network is the product an illegal price-fixing scheme.  On a motion to dismiss, Judge Walker sustained Plaintiffs' claim because, at that stage of the litigation, he was bound to accept the Plaintiff's allegation that the interchange fee was not necessary to, or reasonably ancillary to, "the achievement of the joint venture's procompetitive benefits." Brennan v. Concord EFS, Inc., 369 F.Supp.2d 1127, 1135 (N.D. Cal. 2005).  In response to Defendants' subsequent argument that they had not engaged in "concerted action" to fix prices in the context of their joint venture, this Court terminated their motion for partial summary judgment motion and directed the parties "to proceed forthwith with any discovery

United States District Court
For the Northern District of California

necessary to elucidate the plausible procompetitive justifications that might be advanced in support of the fixed interchange fee." In re ATM Fee Antitrust Litig., No. 04-2676, at 1 (N.D. Cal. Nov. 30, 2006).  The Court suggested that "[s]uch discovery need not be extensive, for many of the plausible arguments are found in the very nature and structure of the agreement itself, as to which all the parties by now have a thorough understanding." Id. at 6.  In a further attempt to focus discovery on relevant issues, the Court directed Defendants to set forth their procompetitive justifications in a preliminary proffer, which they did, albeit not to Plaintiffs' satisfaction. See Docket No. 374, at 13-19 (Mar. 13, 2007).

The Court's aim in ordering further discovery was to provide the parties with a limited opportunity to gather materials related to the economic consequences and justifications of the interchange fee, which could then be tested on a motion for summary judgment.  In retrospect, this effort appears somewhat quixotic.  In an antitrust case, nearly every aspect of a defendant's conduct or business can plausibly be viewed as relevant. See Bd. of Trade of Chicago v. United States, 246 U.S. 231 (1918) ("To determine [the reasonableness of a restraint or agreement] the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts.").

Not unreasonably, Plaintiffs sought far-reaching discovery to test the merits of Defendants' putative procompetitive explanations for the interchange fee.  Plaintiffs argue that they are entitled to any and all information that might shed light on the reason for, the history of, the theory underlying, the operation of, and the effects stemming from both the interchange fee charged by Defendants specifically, and the operation of ATM and other financial transactional networks generally.

The parties now find themselves at loggerheads, in numerous ways, about the proper scope of discovery.  That impasse generated the instant motion to compel.  Plaintiffs argue that they are entitled to "material regarding networks other than Star," "material provided to

United States District Court
For the Northern District of California

1  the government or in connection with [other] relevant private litigation," "material regarding

2  ATM networks in foreign countries," "material from the inception of the Star network to

3  date," "materials regarding entities [that] Defendants acquired," among other materials.

4  Motion at 3-4. Defendants seek relief from what they perceive as the limitless scope of

5  Plaintiffs' demands.

6       The Court does not deny that the materials identified by Plaintiffs might assist them in

7  their effort to debunk the proffered explanations for the interchange fee. Nonetheless, the

8  Court agrees with Defendants that the tremendous scope of these discovery demands are

9  unduly burdensome. Although the discovery rules entitle Plaintiffs to seek all material

10 "reasonably calculated to lead to the discovery of admissible evidence," their theoretical

11 entitlement yields to practical considerations when "the burden or expense of the proposed

12 discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). See also Franchise

13 Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers, 542

14 F.2d 1076, 1082 (9th Cir. 1976) ("Particularly in antitrust litigation, the long drawn out

15 process of discovery can be both harassing and expensive."). But see In re Folding Carton

16 Antitrust Litig., 83 F.R.D. 251, 253 (N.D. Ill. 1978) (approving antitrust plaintiffs' "first

17 wave interrogatories relating to industry information," including "identification of studies,

18 reports, statistical bulletins, analyses, memoranda, and data compilations of folding carton

19 operations for enumerated economic measures").

20      This order sets forth general guidance regarding what the Court considers the

21 appropriate scope of discovery.[1] The parties' discovery disputes fall into three general

22

23      [1] Defendants contend that Plaintiffs have failed to set forth their motion to compel in
   requisite detail. Cf. Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co., 981 F.2d 429, 438-39
24 (9th Cir. 1992) (upholding a magistrate judge's finding that a demand for "millions of pages of
   documents concerning every aspect of [the defendant's business] relationships" was
25 "unnecessarily burdensome and overly broad" where the plaintiff had "fail[ed] to make a
   'specific showing that the burdens of production would be minimal and that the requested
26 documents would lead to relevant evidence'" (quoting Sorosky v. Burroughs Corp., 826 F.2d
   794, 805 (9th Cir.1987))).

27

28      Here, the Court agrees that Plaintiffs have painted their discovery demands with a broad
   brush. For this reason, the Court is constrained to consider many of the disputes presented in
   the motion in categorical terms, rather than with detailed reference to disputed materials. Yet

3

categories: (1) the type of information that is discoverable, (2) the time periods as to which Plaintiffs may obtain discovery, and (3) the format in which discoverable information must be furnished by Defendants.  The Court addresses each of these three issues in turn.

### I. Types of Discoverable Information

This lawsuit is about a specific legal violation (*i.e.*, a violation of the *per se* prohibition against price-fixing, due to a specific course of conduct (*i.e.*, the imposition of a fixed interchange fee).  The interchange fee is the anchor of Plaintiffs' case.  The discovery process must not become unmoored from this issue, lest the case drift into a dispute about the most economically desirable structure of ATM networks generally.  Although Plaintiffs rightly observe that discovery is not limited to Defendants' theory of the case, it is equally true that discovery *is* limited to the specific subject matter presented by Plaintiffs' complaint.  It is from this perspective that the Court approaches Plaintiffs' various requests for documents.

**1.** *Other ATM Networks and ATM Transactions Abroad.*  The Court finds that the production of information about ATM networks other than Star is unnecessarily burdensome.  The Court reaches the same conclusion regarding ATM transactions occurring in foreign countries.  It is true that such information may provide a basis for Plaintiffs to draw useful comparisons to the domestic Star network.  But it is useful in any antitrust suit to understand how other market participants behave or how other markets operate.  The usefulness of this information, however, pales in comparison to the burden of requiring an antitrust defendant to provide any and all information about its global industry and its competitors, as opposed to the anticompetitive practice alleged.  Thus, to the extent that Plaintiffs demands the production information pertaining *exclusively* to other ATM networks, the Court finds that

this does not mean that Plaintiffs' motion is premature.  Given the chasm between the parties' expectations about the appropriate scope of discovery, at least some guidance is necessary at this point, regardless of the abstract and general nature of some of Plaintiffs' demands.  Here, the parties should view the Court's order as setting forth general guidance, rather than concrete commands.  If the Court's order proves inadequate to resolve disputes about specific documents, the parties may seek an additional ruling from the Court--subject, of course, to the Northern District's meet-and-confer requirements.  N.D. Cal. Civ. L.R. 37.  The Court is cognizant of the real discovery dilemmas posed by the theoretical nature of an antitrust case and appreciates the extensive efforts that the parties have made to settle disputes on their own.

**United States District Court**
For the Northern District of California

such demands are unreasonably broad.  The Court draws the came conclusion with respect to ATM transactions occurring *exclusively* outside the United States.  To the extent that Plaintiffs request the production of materials that themselves contain information about other or foreign ATM networks *and the domestic Star ATM network as well*, the Court finds that the production of such information is not unduly burdensome in light of its greater relevance. The Court notes, however, that Defendants appear to have agreed to produce such information.  Cf. Motion at 15 (noting that Defendants agree to produce documents regarding Star that are otherwise discoverable and happen to mention other ATM networks); Concord EFS Opp. at 10 (noting an agreement wherein Defendants agreed that they "would not exclude an otherwise responsive document simply because it mentioned one of these other networks").

  **2.  *Acquired or Merged Entities.***  Plaintiffs have apparently set aside their demand for documents related to NYCE and Cash Station, see Motion at 13 n.16, but continue to request documents related to other ATM networks, specifically MAC and Honor, which have been acquired by and incorporated into the Star ATM network.  Plaintiffs claim that these "predecessor networks" are relevant because they may reveal Defendants' approach to (re)configuring an ATM network.  Defendants do not dispute the relevance of these materials, but they claim that these requests are "the most overbroad and unduly burdensome aspect of [Plaintiffs' demands]."  Further, Defendants note that Plaintiffs previously agreed to forego such materials.  See Wallach Decl., Ex. B, at 2 ("The parties have agreed that Concord would not have to search for or produce Honor, MAC, or Cash Station documents prior to the time that these entities became part of Star.").  The only response that Plaintiffs provide for repudiating their prior agreement is that the agreement was executed before Defendants proffered their procompetitive justifications.  Yet the proffer, contrary to Plaintiffs' suggestion, nowhere explicitly mentions these other predecessor networks.

  Although the predecessor networks are of obvious relevance to the lawsuit, the Court concludes that Plaintiffs must abide by their prior commitment to constrain their discovery requests to the Star ATM network, and not to the predecessor networks generally.  The issues

**United States District Court**
For the Northern District of California

1   presented in the case are not substantially different now than when the case began.  Indeed,

2   the Court's directive "to proceed forthwith with any discovery necessary to elucidate the

3   plausible procompetitive justifications that might be advanced in support of the fixed

4   interchange fee" is directly related to Chief Judge Walker's initial ruling that Plaintiff's had

5   adequately pled that the interchange fee was not necessary to, or reasonably ancillary to, "the

6   achievement of the joint venture's procompetitive benefits."  <u>Brennan v. Concord EFS, Inc.</u>,

7   369 F.Supp.2d at 1135.  In short, despite the twists and turns of this litigation, the playing

8   field has not changed dramatically since Plaintiffs agreed in January of 2006 to forego the

9   materials they now demand.

10      A caveat is in order, however.  The agreement apparently reached by the parties does

11   not indicate exactly what is meant by the phrase "prior to the time that these entities became

12   part of Star."  Wallach Decl., Ex. B, at 2.  The Court construes this limitation to encompass

13   information and documents pertaining to these predecessor networks as they existed before

14   Concord incorporated them under their corporate umbrella.  The Court does not view the

15   agreement as placing a restriction on Plaintiffs ability to obtain information relating to

16   changes made to MAC subsequent to its acquisition by Star in 1998, or to Honor subsequent

17   to its merger with Star in 1999.  <u>Id.</u>; Concord EFS Opp. at 10.  Thus, Plaintiffs are free to

18   explore any changes made to these two networks to achieve their integration with Star or to

19   bring these networks into the Concord fold.  This avenue for discovery, which is likely to

20   produce the information most relevant to Plaintiffs' lawsuit (because it will identify aspects

21   of the predecessor networks that needed to be altered in order to become part of the Star

22   network), remains open.

23      **3. *Other Card Transactions.***  The Court finds that "point-of-sale" transactions and

24   "on-us" transactions are appropriate areas for additional discovery, provided that such

25   transactions pertain to the Star network (or its members) and occur within the United States.

26   The fact that Star network gives customers access to their accounts via other types of

27   transactions that do not involve an interchange fee (if, in fact, these transactions do not

28   involve such a fee) is certainly relevant to Plaintiffs' claim that the interchange fee is

United States District Court
For the Northern District of California

unnecessary and anti-competitive.  (Of course, the Court does not intend to suggest any

conclusion here about the probative value of such evidence, which may pertain to an entirely

distinguishable economic arrangement).  The Court does not hold that every document

pertaining to a POS or on-us transaction is fair game, but rather that a blanket objection to

these areas of inquiry is without merit.  In the Court's view, more extensive exploration

would be warranted as to POS transactions, which ostensibly employ the "machinery" of the

Star ATM network, than would be warranted as to "on-us" transactions, which generally do

not.  The Court notes that many of the defendants appear to have produced information

regarding such card transactions already.  <u>See</u> Opp. of Wells Fargo, Bank One, Bank of

America, and Wachovia at 10-14.  Any further effort to compel production of such materials

should be based not merely on the relevant nature of the transactions themselves, but rather

on the need for specific subsets of POS or "on-us" information, as Plaintiff's demands were

originally framed.

   **4.** ***Government Investigations and Other Litigation.***  Plaintiffs seek materials

"submitted pursuant to the Hart-Scott-Rodino Act" as well as "materials from private

litigation" or arbitration proceedings on the basis that Defendants' "statements in pleadings

or under oath . . . *may* contradict or estop Defendants' claims here."  Motion at 4.  Plaintiffs

state that they "have attempted to limit the burden of searching for this requested information

through the identification of a custodian with knowledge as to these issues and a list of

litigation and arbitration proceedings." <u>Id.</u> at 21.

   The Court concludes that the potential for turning up a needle does not require

Defendants to sift through this haystack.  Plaintiffs have identified no reason to think that

Defendants have ever taken any prior inconsistent position in prior litigation or in their HSR

filings.  Instead, their justification for seeking such is purely speculative.  Reply at 18 (noting

that such materials would be relevant "*if* their own testimony in non-antitrust settings

conflicts with their current litigation position").  Furthermore, Defendants have already

agreed to produce such information if it "relates specifically to antitrust violations."  <u>Id.</u> at

21-22.  Under these circumstances, the Court concludes that the potential and speculative

United States District Court
For the Northern District of California

1  benefit of such materials outweighs the burden of producing them.  See Earley v. Champion

2  Int'l Corp., 907 F.2d 1077, 1085 (11th Cir. 1990) ("A vague possibility that loose and

3  sweeping discovery might turn up something suggesting that [Defendants have changed their

4  view of the market or applicable antitrust principles] does not show particularized need and

5  likely relevance that would require moving discovery beyond the natural focus of the

6  inquiry.").

7      *5. Costs and Revenues.*  The Court finds that Plaintiffs' requests for production of

8  documents related to the costs and revenues associated with the Star ATM network is proper.

9  Undoubtedly, the procompetitive justifications for a fee, which ostensibly supports the ATM

10  network, must be assessed in light of the way a network operates, including the costs its

11  members must bear and the revenues they receive from it.  2 Donald I. Baker et al., The Law

12  of Electronic Fund Transfer Systems ¶ 24.07[5][c] (2006).  The Court rejects Concord's

13  contention that the costs and revenues of the network itself are irrelevant, notwithstanding

14  the fact that the interchange fee itself passes only from a card issuer to an ATM owner.

**II.  Information During Different Time Periods**

15

16      Plaintiff's motion to compel raises two controversies about the time periods as to

17  which Plaintiffs may propound discovery requests.  The first dispute pertains to historical

18  information regarding the Star ATM network, and specifically to the time period between

19  1985 and 1995.  The second dispute pertains to Defendants' obligations to supplement their

20  initial disclosures, which occurred in 2004 and 2005, with more contemporary information.

21      **1. *Historical Information.***  It appears that only Defendant Concord EFS poses an

22  obstacle to Plaintiffs' effort to obtain historical information for the time period from 1985 to

23  1995.  See Reply at 5-7 (describing outstanding disputes with regard to each defendant).

24  Further, both Plaintiffs and Concord EFS appear amenable to some sort of compromise on

25  this issue.  Indeed, the moving papers indicate that they may not be far apart at all.  Concord

26  EFS Opp. at 8 (discussing "an effort to reach compromise"); Reply at 15-16 (same).

27      The Court recognizes that historical information is important to Plaintiffs' case,

28  particularly insofar as it reflects changes to or discussion about the structure of the ATM

**United States District Court**
For the Northern District of California

network.  At the same time, the Court appreciates the burden of sifting through 700 boxes and the many millions of documents contained therein.  The Court therefore directs the parties to proceed initially with their tentative compromise--that is, for Concord to provide an index of its historical documents (however imperfect that summary document may be) and then to provide Plaintiffs with a copy of their favorite thirty (30) boxes.  If that production proves insufficient, and if the parties are unable to agree upon an appropriate supplemental disclosure, Plaintiffs will be free to renew their request to compel additional documents.  Until then, their motion to compel these historical materials is premature, and as to those materials, the motion is therefore denied without prejudice.  The Court encourages Concord to furnish specific information, if possible, regarding the particular historical periods that have attracted Plaintiffs' attention.  See, e.g., Motion at 24 (stating interest in "historical prices, including any changes over time, and evidence reflecting how Defendants made those pricing decisions"); Reply at 16 (discussing the "advent of surcharges" and "the 1988 arbitration decision concerning Pulse interchange fees").

**2.  *Current Information.***  Plaintiffs want supplemental disclosures covering all contemporary materials up to the end of the year 2006.  Defendant Concord EFS refuses to provide materials subsequent to the initial searches and disclosures they made in 2004, while certain of the Bank Defendants refuse to search for and produce discovery for materials subsequent to the summer of 2005.

On the one hand, the Court appreciates Plaintiffs' contention that a great deal of time has passed since the complaint was first filed.  Motion at 25.  The court is also mindful that the present posture of the case raises specific discovery concerns, especially in light of the proffered procompetitive justifications.  Id.  Yet given that there has been "no change to ATM interchange fees since the amended complaint was filed," Concord EFS Opp. at 8, it is difficult to see the value in requiring another round of supplemental disclosures simply in order to gain a better understanding about "why Star maintained the same fixed interchange fees."  Opp. at 16.  The purpose of supplemental disclosures is not to affirm what is already known.  It is to generate new and better information.  See Fed. R. Civ. P. 27(e) (requiring a

United States District Court
For the Northern District of California

party to supplement or to amend a prior response if "the information is disclosed is incomplete or incorrect").  The civil discovery rules do not anticipate perpetual production.

Given that the parties have previously agreed to permit "specific, targeted" requests for additional documents, and given the duration and unusual posture of this case, the Court agrees that some additional production of contemporary materials is permissible.  To that end, the Court directs Plaintiffs to assemble a list of twenty (20) custodians from whom it wishes to obtain additional records, and for the parties then to meet and confer regarding additional production.  Plaintiffs may of course seek additional contemporary information, but if such requests merely seek a supplement about information already provided, Plaintiffs will bear the burden either of demonstrating that such requests are based upon changed circumstances or of showing cause why the information already disclosed is otherwise inadequate.

### III.  Format of Information

The Supreme Court recently amended Rule 34, which now states that "a party who produces documents for inspection shall produce them as they are kept in the usual course of business," and that unless a request specifies otherwise, the production of "electronically stored information" shall be produced "in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable."  Fed. R. Civ. P. 34(b)(i)-(ii).  The rule further provides that the form of electronic production required under the new rule may be altered by agreement of the parties or by order of the Court.  Id.  A month after this new rule went into effect, Plaintiffs propounded their Fourth Set of Requests for Production of Documents.  In their request, Plaintiffs state that Defendants must comply with the amended rule as to any additional productions they make.

The Court declines to compel Defendants to comply with Rule 34 for future document productions.  When this litigation began, the parties agreed to the production of electronic information in a particular format.  Specifically, Defendants agreed to produce, and Plaintiffs agreed to accept, electronic documents stored in the form of a "TIFF file" that is subject to a scanning process known as "OCR."  In plain English, Defendants agreed to give Plaintiffs a

**United States District Court**
For the Northern District of California

1  digital image of all electronic documents that they could search, albeit imperfectly, for

2  certain words and terms.  An amendment to the civil rules--nearly two year after the filing of

3  the lawsuit, and long after the parties established a system for propounding electronic

4  discovery--does not justify the abdication of the parties' agreement, especially given the

5  security concerns raised by Defendants about maintaining the confidentiality of electronic

6  documents.  Of course, if the parties can stipulate to the production of some materials in

7  native electronic format, they are free to do so.  Otherwise, the Court orders that production

8  of additional materials shall proceed in accordance with the parties' prior agreement.

9                                                        **CONCLUSION**

10             According to the findings and conclusions set forth above, Plaintiffs' motion to

11  compel is GRANTED in part and DENIED in part.

12             **IT IS SO ORDERED.**

13

14

15  Dated:  June 25, 2007                              _____
                                                       CHARLES  R. BREYER
16                                                     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28