STEPHEN V. BOMSE (Bar No. 40686)
RACHEL M. JONES (Bar No. 218642)
ADAM J. GROMFIN (Bar No. 226983)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

Attorneys for Defendant SUNTRUST BANKS, INC.,
a Georgia banking corporation, incorrectly
sued as FSB SunTrust Banks, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ATM FEE ANTITRUST LITIGATION | Master File No. C 04-2676 CRB |
| | **CLASS ACTION** |
| This Document Related to:<br><br>ALL ACTIONS | **DECLARATION OF KERRY BRASHEARS IN SUPPORT OF BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

I, Kerry Brashears, declare:

1. I am Group Vice President of Consumer Debit Card Products at SunTrust Banks, Inc. ("SunTrust"). I make this declaration from my own personal knowledge based on information known to me in the course of my responsibilities with SunTrust. If called as a witness, I could and would testify competently to the matters set forth below.

2. I began working at Crestar Financial Corp. in 1997. SunTrust acquired Crestar Financial Corp. on December 31, 1998. Since then, my responsibilities at SunTrust have included management of SunTrust's ATM and debit card products, as well as management of SunTrust's relationships with ATM and payment card networks. In that role, I have been involved in decisions regarding network participation. I also have

BRASHEARS DECLARATION ISO BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(CASE NO.: 04-2676)

participated in decisions concerning SunTrust's pricing for use by SunTrust cardholders of ATMs owned by other banks, as well as for use by other banks' cardholders of SunTrust's ATMs. (Throughout this declaration, I refer to such transactions as "foreign ATM transactions.")

3. Over more than two decades, SunTrust has been a member of a number ATM networks in the United States, including, at various times, the Florida Interchange Group, Honor, Cirrus, Plus, and Star. From approximately 1983 to 2001, SunTrust had an ownership interest in Star predecessor entities and, later, Star itself. For roughly that same time period, SunTrust appointed a representative to serve as a director on Star's (or its predecessors') Board of Directors. In connection with Concord's 2001 acquisition of the Star network, however, SunTrust sold its ownership interest in Star. Since that time, SunTrust has not exercised any control over the operations of Star, including in connection with the establishment of Star's interchange fees.

4. On or about December 23, 2003, SunTrust provided Star Systems with written confirmation that SunTrust would not renew its STAR Member Institution Agreement, which was to expire on December 31, 2004. In June 2004, SunTrust began issuing new and replacement ATM cards with the Plus logo instead of the Star logo, and SunTrust's gradual system conversion to Plus took place primarily during November 2004.

5. SunTrust deploys over 2500 ATMs. However, SunTrust's participation in ATM networks like Star provides SunTrust's cardholders with a much more extensive base of ATMs. For instance, I believe (based on industry publications) that Star presently enables access to hundreds of thousands of ATMs deployed nationwide by the thousands of banks participating in its network. It would be infeasible for SunTrust to offer such a resource on its own. Thus, SunTrust has been and is motivated to participate in ATM networks in order to increase the base of ATMs and network services available to its customers. Access to a wide ATM base enhances SunTrust's ability to serve its cardholders and to compete with other financial institutions for depositors.

6. SunTrust has multiple ATM network options available to it, and this has been

true for many years. Networks actively compete with each other for SunTrust's business. In selecting the networks in which to participate, SunTrust considers a variety of factors. These factors include the size and scope of each network, the footprints of other network participants and the number and locations of their ATMs, the network's technology, its customer service, and its rules governing network membership, transactions, and pricing. Among the many critical network rules are those regarding payments and settlement between network participants (including reimbursement of amounts disbursed, interchange, etc.); financial terms between SunTrust and the network itself (including switch fees, etc.); and risk management, systems for dispute resolution, and numerous other issues.

7. In my experience, a crucial factor in SunTrust's decision to participate in any ATM network is the network's ability to guarantee "universal acceptance." In other words, an ATM network must enable SunTrust to assure its depositors that their SunTrust ATM cards can be used at any ATM participating in the network. I believe that, rather than offering the enhanced level of customer service that SunTrust seeks to provide through ATM network participation, an ATM network that could not guarantee "universal acceptance" would be frustrating and confusing for cardholders. It would result in inefficiency and increased costs. SunTrust therefore would — to say the least — be extremely reluctant to continue its membership in such an ATM network. It is my understanding that all ATM networks adhere to a similar policy requiring universal acceptance for the same reasons that I have just stated.

8. I also do not believe that SunTrust would (or should) participate in an ATM network that lacked a comprehensive and binding set of default rules establishing all material terms governing transactions conducted over the network. Among such material terms are the amount, timing, and other provisions by which an ATM deployer will receive payment from the card issuer for providing cash to the issuer's cardholder. As an ATM deployer, SunTrust naturally would be unwilling to dispense cash to another bank's cardholder absent some agreement establishing these essential terms.

9. During the time I have managed ATM and debit products at SunTrust,

3

BRASHEARS DECLARATION ISO BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(CASE NO.: 04-2676)

1  SunTrust has never been presented with a situation in which a network has proposed that
any material term for foreign ATM transactions (including the level of interchange fees)
would be determined solely through bilateral negotiations between participants in the
network, instead of being established centrally by the network. Had such a situation been
presented, SunTrust would have been unwilling to join (or to continue its participation in)
that network. The negotiation and administration of the vast number of bilateral agreements
necessary under such a circumstance would be unjustifiably costly and difficult. If a regime
of strictly bilateral negotiations on interchange had been in place when SunTrust joined Star
(or if such a regime had been put in place during SunTrust's membership in Star), SunTrust
would have explored alternatives to participation in the network. Such alternatives might
include moving to a different network that did not impose that onerous requirement or, if
this option were unavailable, eschewing network participation in favor of seeking to
supplement SunTrust's ATM base through increased deployment and/or by negotiating a
limited number of bilateral contracts with large ATM deployers that provided coverage in
areas not adequately served by SunTrust's own ATMs.

10.   SunTrust charges some of its customers a "foreign ATM fee" for transactions they conduct at ATMs not belonging to SunTrust. Other customers are not charged such foreign ATM fees, however, or only are charged such fees for foreign ATM transactions exceeding a certain number per month. The decision as to which customers will be charged a foreign ATM fee, and under what conditions, forms part of the SunTrust's overall strategy in packaging the services offered to various groups of its depository customers.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 1st day of August, 2007 at Atlanta, Georgia.

*Kerry Brashears* (signature)
Kerry Brashears

4
BRASHEARS DECLARATION ISO BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(CASE NO.: 04-2676)