ROBERT S. STERN (CA SBN 68240)
GREGORY B. KOLTUN (CA SBN 130454)
MORRISON & FOERSTER LLP
555 West Fifth Street, Suite 3500
Los Angeles, California 90013-1024
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.
Successor-in-interest to
BANK ONE, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ATM FEE ANTITRUST LITIGATION | Master File No. C 04-02676 CRB |
| | [CLASS ACTION] |
| This Document Relates To:<br><br>ALL ACTIONS | DECLARATION OF DAVID C. COHEN IN SUPPORT OF BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

I, David C. Cohen, declare:

1.  I am David C. Cohen, Senior Vice President of JPMorgan Chase Bank, N.A. (with its predecessor banks, referred to as "Chase" below). My responsibilities include product management for consumer products sold through Chase's branches nationwide. In that role, I am in charge of Chase's pricing of all consumer checking account products, including ATM foreign fees and surcharges. From 2002 through early 2007, I also was responsible for access card product management functions, including ATM cards. In that role, I was in charge of network strategy, including evaluation and selection of participating ATM networks. I make this declaration from my own personal knowledge based on information known to me in the course of my responsibilities with Chase.

2. For more than two decades, Chase has been a member of one or more ATM networks in the United States, including during almost all of that period the Star network. Chase previously was a member of the Board of Directors of Star and owned an interest in the Star network, but that interest was sold in early 2001, and since that time Chase has not been a member of the Star Board.

3. Chase's primary motivation for membership in ATM networks has been to make ATM network services available to the Bank's own depositors, so as to serve our customers and to enhance Chase's ability to compete with other financial institutions for depositors. Another value of network membership is that, by allowing other banks' customers to use our ATMs, we defray some of the costs of installing and maintaining our ATMs for the benefit of our customers. Although Chase has deployed many ATMs, the extensive ATM base that an ATM network such as Star provides represents a resource that would be economically impractical for Chase to offer on its own.

4. From Chase's perspective, a critical feature of an ATM network is the principle of universal acceptance, through which Chase can assure its depositors that an ATM card issued by us can be used at any ATM on the network. Chase would be reluctant to continue its membership in Star or any other network if that network were unable to guarantee universal acceptance.

5. Chase also would not be willing to participate in an ATM network that did not have a comprehensive and binding set of operating rules that established all material terms for transactions conducted over the network and that controlled entry into the network so as to assure the financial and operational integrity of the other network participants, including their ability to settle transactions. Among those material terms are the amount, timing, and other conditions under which an ATM deployer receives payment from the card-issuer for making a cash disbursement to the other member's ATM card holder. As an ATM deployer, Chase naturally would be unwilling to dispense cash to another bank's customer unless there were an agreement and business processes in place establishing these terms.

6. Chase has multiple ATM network options available to it. In selecting the networks in which it participates, Chase considers a variety of factors, including the size and scope of the

network, the locations of its ATMs, economic incentives, and the network's pricing, including its transaction and interchange fees. The Bank considers the amount of the interchange fee to be a necessary element of the agreement governing the terms of the network membership.

7. If participation in the Star ATM network required reaching bilateral agreements with every other member of that network on the level of the interchange fee (or any other material term for foreign ATM transactions), Chase would not have been willing to continue its participation in the network. The negotiation and administration of the vast number of bilateral agreements necessary for such participation would be far too costly to justify participation, and the calculation and distribution of interchange fees could not practically be handled on a bilateral basis. If a regime of strictly bilateral negotiations on interchange had been in place (or if such a regime were put in place in the future), Chase would explore other alternatives, such as moving its membership to a different network that did not impose that onerous requirement or, if that option were unavailable, seeking to supplement its own ATM base with a limited number of bilateral contracts with large ATM deployers that provided coverage in areas not adequately served by the Bank's own ATMs.

8. From 2000 to 2005, when Chase began reducing the number of ATM cards participating in the Star network, Chase had been a net issuer for ATM transactions over the Star network. By "net issuer," I mean that Chase paid other Star participants more in interchange fees on an annual basis than it received in interchange fees.

9. Chase charges many of its customers a "foreign ATM fee" for transactions they conduct at ATMs not belonging to Chase. Some customers are not charged foreign ATM fees, however, and others are charged foreign ATM fees only if they make more than a predetermined number of foreign ATM transactions (e.g. 2 or 4) in a given monthly cycle. The decision on which customers will be charged a foreign ATM fee, and under what conditions, forms part of the bank's overall strategy in packaging the services offered to various groups of its depository customers.

1  I declare under penalty of perjury under the laws of the United States that the foregoing is
2  true and correct and that this Declaration was executed this 27th day of July 2007, at Columbus,
3  Ohio.

_____
David C. Cohen