1

SONYA D. WINNER (SBN 200348)
JAMES R. ATWOOD (SBN 044798)

2

TARA M. STEELEY (SBN 231775)
COVINGTON & BURLING LLP

3

One Front Street, 35th Floor
San Francisco, CA 94111

4

Telephone: (415) 591-6000
Facsimile: (415) 591-6091

5

swinner@cov.com

6

Attorneys for Defendant BANK OF
AMERICA CORPORATION

7

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN FRANCISCO DIVISION

12

13

In re ATM FEE ANTITRUST LITIGATION

14

This Document Relates To:

15

All Actions

16

17

Master File No. C04-2676 CRB

**CLASS ACTION**

**DECLARATION OF JENNIFER E.
HAAG IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT ON
PLAINTIFFS' PER SE CLAIM**

18

19

I, Jennifer E. Haag, declare:

20

1.    I am a Senior Vice President at Bank of America, N.A. ("Bank of America").  I

21

make this declaration from my own personal knowledge based on information known to me in

22

the course of my responsibilities with Bank of America.  If called as a witness, I could and

23

would testify competently to the matters set forth below.

24

2.    I joined Boatmen's Bank, a predecessor of Bank of America, in 1994.  In 1996,

25

Boatmen's Bank merged with NationsBank.  NationsBank and Bank of America merged in

26

1999.  I refer herein to Boatmen's Bank, NationsBank and Bank of America collectively as

27

"Bank of America" in this declaration.

28

3.      I have worked in the ATM Channel for Bank of America since 1996.  During the past eleven years, I have been involved in numerous aspects of the ATM Channel, including finance, customer satisfaction, network management, fee pricing, and product development.  I am currently a Senior Vice President in ATM Product Management.

4.      For more than two decades, Bank of America has been a member of one or more ATM networks in the United States, including during much of this period the Star network. Bank of America previously owned an interest in the Star network, but that interest was sold in early 2001, and since that time Bank of America has had no control over the operations of Star, including in connection with the establishment of Star's interchange fees.

5.      Bank of America has also been a member of the following networks during some or all of my tenure at Bank of America:  Plus, Cirrus, MAC, Honor, Shazam, Presto, Pulse, and NYCE.  Bank of America has multiple ATM network options available to it.  In selecting the networks in which it participates, Bank of America considers a variety of factors, including the size and scope of the network, the locations of its ATMs, and its fee terms, including terms on interchange fees.

6.      Bank of America's dominant motivation for membership in ATM networks is and has been to make ATM network services available to our own customers (depositors), so as to serve our customers and to enhance Bank of America's ability to compete with other financial institutions for depositors.  Although Bank of America has deployed over 17,000 ATMs and is the largest bank-owned ATM network in the United States, the extensive and geographically-diverse ATM base that an ATM network such as Star provides represents a resource that would be economically impossible for Bank of America to offer on its own.

7.      From Bank of America's perspective, when selecting a network, a critical feature of an ATM network is the principle of universal acceptance, through which the Bank can assure its depositors that an ATM or Debit card issued by Bank of America can be used at any ATM on the network.  Bank of America would be reluctant to continue its membership in Star if the network were unable to guarantee universal acceptance.  An ATM network that cannot offer universal acceptance cannot offer the enhanced customer service that Bank of America

seeks through its participation in ATM networks.  Bank of America would not rely on an ATM network that failed to offer Bank of America's depositors access to all ATMs that carry the network's logo.

8.      Bank of America would not be willing to participate in an ATM network that did not have a comprehensive and binding set of operating rules that established all material terms for transactions conducted over the network.  Among those material terms are the amount, timing, and other terms by which an ATM deployer will receive payment from the card-issuer for providing a cash withdrawal to the other member's cardholder.  As an ATM deployer, Bank of America would naturally be unwilling to dispense cash to another bank's cardholder unless there were some agreement in place establishing these terms.  Bank of America considers the amount of the interchange fee, if any, to be a necessary element of any such agreement.

9.      To my knowledge, Bank of America has never been presented with a situation in which a network has proposed that the level of interchange fees (or any other material term for foreign ATM transactions) would be determined solely through bilateral negotiations between participants in the network instead of being established centrally by network rule.  If participation in the Star ATM network had required reaching bilateral agreements with every other member of that network on the level of interchange fee (or any other material term for foreign ATM transactions), it is unlikely that Bank of America would have been willing to continue its participation in the network.  The negotiation and administration of the vast number of bilateral agreements necessary for such participation would be far too costly to justify participation.  If a regime of strictly bilateral negotiations on interchange had been in place (or if such a regime were put in place in the future), Bank of America would explore other alternatives, such as moving its membership to a different network that did not impose that onerous requirement or, if that option were unavailable, seeking to supplement its own ATM base with a limited number of bilateral contracts with large ATM deployers that provided coverage in areas not adequately served by Bank of America's own ATMs.

10.     Since at least 2001, Bank of America has been a net issuer for ATM transactions over the Star network.  By "net issuer," I am referring to the fact that Bank of America has paid other Star participants more in interchange fees on an annual basis than it has received in interchange fees.

11.     Bank of America charges many of its customers a "foreign ATM fee" for transactions they conduct at ATMs not belonging to Bank of America.  However, some customers are not charged foreign ATM fees.   Also, until recently, Bank of America allowed some depository customers to make a certain number of foreign ATM transactions per month before incurring foreign ATM fees.  The decision on which customers will be charged a foreign ATM fee, and under what conditions, forms part of Bank of America's overall strategy in packaging the services offered to various groups of its depository customers.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my personal knowledge.

Executed this   2   day of  August  , 2007,  in St. Louis, Missouri.

Jennifer Haag