LATHAM & WATKINS LLP
  Daniel M. Wall (Cal. Bar No. 102580)
  Joshua N. Holian (Cal. Bar No. 211772)
  Brett D. Collins (Cal. Bar No. 223357)
  Katie Chang (Cal Bar No. 246247)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-2562
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095

BAKER & MILLER
  Donald I. Baker
2401 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C.  20037
Telephone:  (202) 663-7820
Facsimile:  (202) 663-7849

Attorneys for Defendants
Wells Fargo & Co., Wells Fargo Bank, N.A., and
Servus Financial Corporation

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ATM FEE ANTITRUST LITIGATION | Case No. C 04 2676 CRB |
| | **CLASS ACTION** |
| | **DECLARATION OF EDWARD M. KADLETZ** |
| | Date:           October 5, 2007<br>Time:          10:00 AM<br>Courtroom:    8 |
| | Honorable Charles R. Breyer |
| Relates to All Actions | |

1

## <u>DECLARATION OF EDWARD M. KADLETZ</u>

I, Edward M. Kadletz, declare as follows:

1.   My name is Edward M. Kadletz.  I am over the age of eighteen.  I am the Executive Vice President of Card Services for Wells Fargo Bank, N.A. . ("Wells Fargo").  I have personal knowledge of the facts set forth below and if called as a witness could testify competently to them.

2.   Wells Fargo is a financial services institution.  Among other things, Wells Fargo provides Automatic Teller Machine ("ATM") services.  Wells Fargo participates in various ATM networks.  One of the ATM networks in which Wells Fargo participates is the Star ATM Network.

3.   For more than two decades, Wells Fargo has been a member of one or more ATM networks in the United States, including during much of this period the Star network.

4.   Wells Fargo previously owned an interest in the Star network, but that interest was sold in early 2001, and since that time Wells Fargo has had no control over the operations of Star, including in connection with the establishment of Star's interchange fee.

5.   Wells Fargo's dominant motivation for membership in ATM networks has been to make ATM network services available to Wells Fargo's own customers (depositors), so as to serve our customers and to enhance Wells Fargo's ability to compete with other financial institutions for depositors.

6.   The extensive ATM base that an ATM network such as Star provides represents a resource that would be economically infeasible for Wells Fargo to offer on its own.

7.   A critical feature of an ATM network is the principle of universal acceptance, through which Wells Fargo can assure its depositors that an ATM card issued by Wells Fargo can be used at any ATM on the network.  Wells Fargo would be reluctant to continue its membership in Star if the network were unable to guarantee universal acceptance.

8.   Wells Fargo would not be willing to participate in an ATM network that did not have a comprehensive and binding set of operating rules that established all material terms for transactions conducted over the network.  Among those material terms are the pricing,

obligations of the parties, dispute resolution, , and other terms that govern participation in the network.  Wells Fargo naturally would not be willing to dispense cash to another bank's cardholder or allow participation of its own cardholders unless there were some agreement in place establishing these terms.  Wells Fargo considers the amount of the interchange fee, if any, to be a necessary element of any such agreement.

9.   Wells Fargo has multiple ATM network options available to it.  In selecting the networks in which it participates, Wells Fargo considers a variety of factors, including the size and scope of the network, the locations of its ATMs, and its fee terms, including terms on interchange fees.

10. Wells Fargo personnel have occasionally thought about alternatives to the current network-established interchange fees, but there has never been any serious consideration of replacing a centrally-established interchange system with bilateral negotiations.  That would plainly be infeasible.  It would take either regulatory mandate or some kind of industry-wide agreement (which presumably plaintiffs would find as offensive as the Star-determined interchange fees) to establish interchange terms that would provide the certainty of obligation that an ATM network needs to achieve universal acceptance.

11. If participation in the Star ATM network required reaching bilateral agreements with every other member of that network on the level of interchange fee (or any other material term for foreign ATM transactions), Wells Fargo would not have been willing to continue its participation in the network.  The negotiation and administration of the vast number of bilateral agreements necessary for such participation would be far too costly to justify participation.  If a regime of strictly bilateral negotiations on interchange had been in place (or if such a regime were put in place in the future), Wells Fargo would explore other alternatives, such as moving its membership to a different network that did not impose that onerous requirement or, if that option were unavailable, seeking to supplement its own ATM base with a limited number of bilateral contracts with large ATM deployers that provided coverage in areas not adequately served by Wells Fargo's own ATMs.

1    12. Wells Fargo historically has been a net issuer for ATM transactions over the

2  Star network.  By "net issuer," I mean that Wells Fargo has paid other Star participants more in

3  interchange fees on an annual basis than it has received in interchange fees.

4    13. Wells Fargo charges many of its customers a "foreign ATM fee" for

5  transactions they conduct at ATMs not belonging to Wells Fargo.  Some customers are not

6  charged foreign ATM fees.  The decision on which customers will be charged a foreign ATM

7  fee, and under what conditions, forms part of Wells Fargo's overall strategy in packaging the

8  services offered to various groups of its depository customers.

9    I declare under penalty of perjury under the laws of the State of California and the

10  United States of America that the foregoing is true and correct.  Executed in Minneapolis,

11  Minnesota on August 2, 2007.

12

13

14  _____
          Edward M. Kadletz

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case Number: C 04-2676 CRB
Declaration of Edward M. Kadletz