JAMES C. EGAN, JR. (admitted *pro hac vice*)
CARRIE M. ANDERSON (admitted *pro hac vice*)
ERIC C. LYTTLE (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW – Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

GREGORY D. HULL (California Bar No. 57367)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendant CITIBANK, N.A.
*successor-by-merger to Defendant Citibank (West), FSB*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| In re ATM FEE ANTITRUST LITIGATION | Master File No. C04-2676 CRB |
|---|---|
| | **CLASS ACTION** |
| This Document Relates To:<br><br>ALL ACTIONS | **DECLARATION OF JEFFREY PEARLBERG IN SUPPORT OF BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

I, Jeffrey Pearlberg, declare:

    1.    I currently am the Director of Products & Marketing for the North American Citibank Retail Bank ("Citibank"). As the Director of Products & Marketing, I am responsible for developing and managing Citibank's North American retail banking products, including its ATM and debit card portfolio and strategies related thereto. I make this declaration from my own personal knowledge based on information known to me in the course of my responsibilities with Citibank. If called as a witness, I could and would testify competently to the matters set forth below.

1    2.    Citibank and its predecessors have been members of ATM networks in the United States for over two decades. Over time, Citibank has been a member of a number of different ATM networks, including NYCE, Cirrus, Plus, and the Star ATM Network ("Star").

4    3.    Citibank, FSB had an ownership interest in Star from its inception through early 2001, when Concord acquired Star. Citibank remained a member of Star following the sale of its ownership interest until approximately April 2007, when Citibank left Star in favor of eventual exclusive North American participation in the MasterCard ATM and debit card networks, Cirrus and Maestro, respectively.

9    4.    Citibank participates in ATM networks to make ATM services available to Citibank's current account holders, as well as to better enable Citibank to compete with other financial institutions for new account holders. Citibank has deployed its own ATMs in its branches and in off premise locations through a variety of programs and partnerships. However, the extensive ATM base that an ATM network such as Star provides could not be duplicated by Citibank on its own.

15   5.    From Citibank's perspective, universal acceptance is a critical feature of an ATM network. Without universal acceptance, Citibank could not guarantee its depositors that their Citibank ATM cards could be used to withdraw cash at any ATM on the network. This guarantee is expected by account holders and without it Citibank would be at a competitive disadvantage in offering ATM services. Indeed, if a network could not guarantee universal acceptance, Citibank would not participate in that network.

21   6.    Further, Citibank would not participate in an ATM network that did not have a comprehensive and binding set of operating rules establishing in advance all material terms for transactions conducted over the network. Among those material terms are the amount, timing, and other terms under which Citibank will receive payment from other banks for providing cash to those banks' accountholders. Indeed, Citibank naturally would be unwilling to dispense cash to another bank's card holder without an advance agreement clearly establishing these terms. The amount of any interchange fee is one of the terms on which an advance agreement is necessary for Citibank to be willing to participate.

DECLARATION OF JEFFREY PEARLBERG IN SUPPORT OF
BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT        2                           Case No. C04-2676 (CRB)

7.    At any given time, Citibank has multiple competing ATM networks from which to choose. In making ATM network participation decisions, Citibank considers a wide variety of factors, including the size and geographic scope of the network, the locations of its ATMs, and its fees, including interchange fees.

8.    If participating in any ATM network required reaching bilateral agreements with every other member of that network on the level of interchange fee (or any other material term for foreign ATM transactions), Citibank would not participate in the network. The sheer number of separate agreements that Citibank would be required to negotiate and oversee would render continued participation too costly and infeasible. If such a requirement had been in place for any network in which Citibank participated, Citibank would have explored other alternatives, such as participating in other networks with advance agreement on the interchange and other relevant terms or, if that option were unavailable, seeking to supplement its own ATM base with a limited number of agreements with large ATM deployers sufficient to service Citibank's depositors where its own ATM network could not. This also is true if such a requirement were to develop in the future on any ATM network in which Citibank participates.

9.    To the best of my knowledge, Citibank always has been a net issuer for ATM transactions – not only over Star, but over all ATM networks. By "net issuer," I mean that Citibank pays other ATM deployers more in ATM interchange fees than it receives in ATM interchange fees.

10.   Citibank charges certain customers a foreign ATM fee for cash withdrawal transactions conducted at non-Citibank ATMs, but the majority of Citibank customers are not charged this fee. Whether or not a particular customer is charged a foreign ATM fee depends on the terms and conditions of his or her account. Similar variances exist regarding surcharges, which are rebated to some account holders but not others. The decision as to which account holders will be charged a foreign ATM fee or receive a surcharge rebate, and under what conditions, is one element of Citibank's overall strategy in packaging its banking services to best attract prospective and retain current account holders.

1    I declare under penalty of perjury that the foregoing is true and correct. Executed on

2  August 2, 2007 in Long Island City, New York.

*[signature]*
Jeffrey Pearlberg

DECLARATION OF JEFFREY PEARLBERG IN SUPPORT OF
BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT     4                        Case No. C04-2676 (CRB)