Jack R. Nelson (SBN 111863)
Kirsten J. Daru (SBN 215346)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922
jnelson@reedsmith.com
kdaru@reedsmith.com

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:   415.543.8700
Facsimile:   415.391.8269

Attorneys for Defendants and Wachovia
Corporation and Wachovia Bank

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ATM FEE ANTITRUST LITIGATION | Master File No.: C04-2676 CRB<br><br>**CLASS ACTION**<br><br>**DECLARATION OF RALPH A. PERRY IN SUPPORT OF BANK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PER SE CLAIM**<br><br>Date:         October 5, 2007<br>Time:        10:00 a.m.<br>Courtroom:   8<br><br>Honorable Charles R. Breyer |
| This Document Relates To:<br><br>ALL ACTIONS | |

I, Ralph A. Perry, declare:

1. I am a former employee and officer of Wachovia Bank. I make this declaration from my own personal knowledge and to the best of my recollection based on information known to me in the course of my employment and responsibilities with Wachovia Bank. If called as a witness, I could and would testify competently to the matters set forth below.

2. I joined First Union, a predecessor of Wachovia Bank, in 1979. In 2001, First Union merged with Wachovia and the merged entity named itself Wachovia Bank. I refer below to the prior First Union entity and the new merged entity collectively as "Wachovia." I retired from Wachovia on June 30, 2005. In my last position at Wachovia, I was responsible for management of Wachovia's fleet of Automated Teller Machines ("ATMs"). I had held this position since approximately 2000, when the former head of Wachovia's ATM department retired. Between approximately 1983 and 1998, I directed distribution planning in Wachovia's marketing division, where my responsibilities included matters such as branch planning, branch site and access methods for customer deposit and checking accounts, with part of my function being research and development for ATM, ATM placement strategies and, as necessary, involvement in the selection of ATM networks in which Wachovia wanted to participate.

3. During most of my tenure with Wachovia, it was a member of many ATM networks in the United States. In the earliest years there were many that were state- or regionally-based and were selected for geographical reasons, although there were national network selections to make as well. In later years, as networks began combining, networks began overlapping geographically. The networks in which Wachovia participated in the later years of my tenure included the PLUS, CIRRUS and MAC networks, the HONOR network and later, after HONOR acquired Star and kept its name, the Star network.

4. Wachovia had owned an interest in the Star network, but that interest was sold in approximately 2001 when Concord acquired the Star network. Near the end of my tenure with Wachovia, Wachovia left the Star network in favor of participation in the NYCE ATM network.

5. During my tenure with Wachovia, it participated in ATM networks in order to make network-participating ATMs available to Wachovia's customers and give them wider access to cash withdrawal services than they could have with Wachovia's ATM fleet alone. While Wachovia itself deployed many ATMs, the geographically widespread, extensive ATM base that an ATM network

offered represented a resource that Wachovia (more accurately, Wachovia's customers) could access, without the need for Wachovia to make the prohibitive economic investments that would have been required if Wachovia had tried to duplicate the network's full ATM base on its own.

6. During my years with Wachovia, it had multiple ATM network options available to it, and the available choices changed over time. In selecting the networks in which it participated, Wachovia considered a variety of factors, including the size and scope of the network, the locations of its ATMs, and all of its fee terms, including terms on switch fees and interchange fees.

7. Over my tenure with Wachovia, a critical feature of the decision to participate in ATM networks was that they offered Wachovia the assurance that an ATM card issued by Wachovia to its customer could be used at any ATM affiliated with the network. Failure to offer that assurance would have been a failure to achieve the enhanced customer service that Wachovia was seeking to provide via network participation.

8. In my experience, Wachovia also would not have been willing to participate in any ATM network that did not have a comprehensive and binding set of operating rules that established all material terms for transactions conducted over the network, such as the amount, timing and other terms by which Wachovia, as an ATM deployer, would receive payment from another card-issuer bank for providing a cash withdrawal to that other bank's customer. The amount of the interchange fee that Wachovia would receive was, to Wachovia, a necessary element of those rules.

9. During my tenure with Wachovia, Wachovia typically was a "net issuer" for ATM transactions over its network participations, meaning that Wachovia paid other network participants more in interchange fees on an annual basis than it received from other network participants.

10. During my tenure with Wachovia, we were never presented with a situation where a network proposed that the level of interchange fee (or any other material term for foreign ATM

transactions) would have to be determined as between Wachovia and each other participant in the network via direct separate negotiation with every network participant instead of being set centrally by the network for all participants. I have a difficult time, however, imagining a situation in which Wachovia would have been willing to participate in any ATM network, and certainly in any network with a large number of participants, that had such a structure. To me, one obvious and substantial problem with such a proposal would be that the probable effort and cost of negotiating and administering the agreements suggested would be so high as to call into question the benefit of being part of such a network, and the greater the number of agreements that would be required in any such structure, the less I can imagine Wachovia having been willing to participate in it.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Mooresville, North Carolina on July 30, 2007.

_____
Ralph A. Perry